# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| Frederick Earl Hight, Sr., as Administrator of the Estate of Frederick Earl Hight, II, <br><br> Plaintiff, <br><br> v. <br><br> Nick Smith, Walker County Sheriff, in his individual capacity; John "JJ" Jackson, Walker County Deputy Sheriff, in his individual capacity, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     6:21-cv-01307-LSC <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## Memorandum of Opinion and Order

Frederick Hight, Sr. ("Hight Sr.") brings this action against Walker County Sheriff Nick Smith and Deputy Sheriff John Jackson. Hight Sr. claims that Deputy Jackson violated 42 U.S.C. § 1983 by using excessive force against his son, Frederick Hight, II ("Hight II"). Alleging that Deputy Jackson has a history of using excessive force, Hight Sr. also asserts a § 1983 failure-to-screen claim against Sheriff Smith. Against both defendants, Hight Sr. brings a state law claim for wrongful death. In response, both defendants filed a motion to dismiss the state law claim, and Sheriff

Smith filed a motion to dismiss the § 1983 claim against him. (Doc. 33.) For the following reasons, the motions to dismiss are DENIED.

I.     **Background**[1]

In February 2021, Hight Sr. called the Walker County emergency services to seek assistance for his son, Hight II. (Doc. 32 at 3.) Hight Sr. reported that his son suffered from mental illness, and that he was concerned for his well-being. (*Id.* at 4.) Deputy Jackson responded to the call. (*Id.*) When he arrived, Hight Sr. was waiting outside the home. (*Id.*) Deputy Jackson entered and instructed Hight Sr. to follow. (*Id.*) Once inside, he confronted Hight II. (*Id.* at 5.) He allegedly drew his pistol and ordered Hight II to "get on the ground." (*Id.*) With his firearm in one hand, Deputy Jackson then kneeled over Hight II while attempting to handcuff him. (*Id.*) As tensions escalated, Deputy Jackson allegedly pointed his gun at Hight II's chest and threatened to shoot him. (*Id.* at 6.) He then allegedly placed the gun barrel on Hight II's chest and pulled the trigger. (*Id.*) Hight II allegedly died as a result of the gunshot. (*Id.* at 7.)

---

[1]     In evaluating a motion to dismiss, this Court "draw[s] the facts from the allegations in the complaint, which [it] accept[s] as true and construe[s] in the light most favorable to the plaintiffs." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1271 n.4 (11th Cir. 2012). The following facts are, therefore, taken from the allegations contained in Plaintiff's Complaint, and the Court makes no ruling on their veracity.

As Administrator of the Estate of Hight II, Hight Sr. filed suit against Deputy Jackson and Sheriff Smith. (*Id.* at 1.) In his amended complaint, he alleges that Deputy Jackson used excessive force in violation of 42 U.S.C. § 1983. (*Id.* at 12.) Hight Sr. also brings a § 1983 claim for "negligent hiring" against Sheriff Smith. (In his brief, Hight Sr. characterizes this claim as a failure-to-screen claim.) (*See id.* at 13; doc. 38 at 9.) Finally, he asserts a state law wrongful death claim against Sheriff Smith and Deputy Jackson. (Doc. 32 at 14.)

Hight Sr. claims that Sheriff Smith should not have hired Deputy Jackson because of prior documented instances of excessive force. (*Id.*) The amended complaint identifies three previous civil suits that concern Deputy Jackson's conduct during his tenure as Chief of Police of the City of Dora. (*Id.* at 8–10.) Each of these suits allegedly settled before trial. (*Id.*) In two instances, the plaintiffs suffered from mental impairment. (*Id.*)

On one occasion, Deputy Jackson responded to a request for a welfare check, entered the home of the plaintiff, and according to the complaint, "brutally assaulted him . . . kicking [the plaintiff] in the head multiple times and spraying pepper spray." (*Id.* at 8–9.) On another occasion, it is alleged that Deputy Jackson arrested a woman, grabbed her hair to force her into a patrol car, struck her in the face, and beat her while she was in custody. (*Id.*) In the third instance, Deputy Jackson allegedly

"committed assault and battery against" a plaintiff. (*Id.* at 10.) According to the Plaintiff, the City of Dora fired Deputy Jackson, "at least in part, due to credible and meritorious complaints of excessive force." (*Id.* at 11.)

## II.     Standard of Review

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id*. Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id*. If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

### III.   Analysis

### A. Section 1983 Claim against Sheriff Smith

Under 42 U.S.C. § 1983, "masters do not answer for the torts of their servants." *See Iqbal*, 556 U.S. at 677. Generally, then, "each Government official . . . is only liable for his or her own misconduct." *Id*. Sheriff Smith, therefore, can only face liability for his decision to hire Deputy Jackson if the Court applies "rigorous standards of culpability and causation . . . to ensure that [Sheriff Smith] is not held

liable solely for the actions" of Deputy Jackson. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997).

For culpability, the decisionmaker must act with "deliberate indifference" to the Plaintiff's rights. *See id*. at 411. In the hiring context, the deliberate indifference standard is only satisfied "where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation" of a protected right. *Id*. For causation, the Court must find "that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff," so the link "between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id*. at 412 (emphasis in original).

In *Bryan County*, the Supreme Court declined to impose liability against a municipality for a hiring decision. In that case, a deputy sheriff applicant had a history of various misdemeanor offenses, including assault, resisting arrest, and several driving-related offenses. *See id*. at 413–14. These transgressions "may well have made him an extremely poor candidate for reserve deputy," but the municipality's decision to hire the deputy did not "reflect[] [a] conscious disregard of an obvious risk that a use of excessive force would follow." *Id*. at 415.

At this stage of the proceedings, Hight Sr.'s allegations against Sheriff Smith "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Crucially, Hight Sr. alleges that Deputy Jackson had a history of using excessive force, especially against those with mental health problems. To support this allegation, Hight Sr. points to several episodes in Deputy Jackson's past. While Deputy Jackson was Police Chief of the City of Dora, three plaintiffs allegedly sued him for using excessive force. In two of these cases, family members had called the police out of concern for the mental health of relatives, and Deputy Jackson allegedly used excessive force against these mentally ill relatives. Because of these incidents and others, Deputy Jackson allegedly lost his position as Dora Police Chief.

These allegations of past misconduct bear a very strong resemblance to Deputy Jackson's alleged use of excessive force against Hight II. Unlike the plaintiff in *Bryan County*, Hight Sr. is not merely alleging that Deputy Jackson's background reveals violent or reckless proclivities in general. *See Bryan Cnty.*, 520 U.S. at 413–15. Rather, Hight Sr. specifically alleges that Deputy Jackson's background clearly reflects his propensity to use excessive force against the mentally impaired. As a result, Deputy Jackson's use of excessive force against Hight II "would have been a plainly obvious consequence of" Sheriff Smith's hiring decision. *Id*. at 414.

Notwithstanding, Sheriff Smith contends that qualified immunity protects his decision to hire Deputy Jackson—even if it was constitutionally infirm—because his decision did not violate a "clearly established" constitutional right. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To be sure, courts cannot "define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). But in this case, Eleventh Circuit precedent supplies the necessary degree of specificity.

In *Griffin v. City of Opa-Locka*, the Eleventh Circuit sustained a jury's finding that a city's inadequate screening of an applicant's "background was so likely to result in sexual harassment that the City could reasonably be said to have been deliberately indifferent to [the plaintiff's] constitutional rights." 261 F.3d 1295, 1313 (11th Cir. 2001). When considering the applicant, the city "was inundated with articles, faxes, and mail, warning of [the applicant's] problems with sexual harassment and dealings with women." *Id.* at 1314. The Court also noted "that a cursory check into [the applicant's] prior employment history would have further alerted the City to prior complaints about [the applicant] with regard to sexual harassment." *Id.*

Sheriff Smith argues that *Griffin* is distinguishable because Deputy Jackson's alleged history of excessive force is less blatant than the *Griffin* applicant's penchant for sexual harassment. *Griffin* may represent a particularly egregious case, but its factual parallels are nonetheless similar enough to have put Sheriff Smith on notice. The city in *Griffin* knew of or consciously ignored numerous complaints of sexual harassment; similarly, Hight Sr. alleges that Sheriff Smith knew of and ignored "repeated, credible claims of excessive force by Defendant Jackson—particularly in response to wellness checks and against those with mental impairments." (*See* doc. 32 at 11.)

Given the foregoing considerations, Hight Sr's § 1983 failure-to-screen claim survives Sheriff Smith's motion to dismiss—though it may not survive the greater rigors of summary judgment.

**B. State Law Claim against Sheriff Smith and Deputy Jackson**

"The wall of immunity erected by § 14 [of Article I of the Alabama Constitution] is nearly impregnable." *Patterson v. Gladwin Corp.*, 835 So. 2d 137, 142 (Ala. 2002). This broad grant of State immunity protects sheriffs and their deputies when they act "within the line and scope of their employment." *Ex parte Purvis*, 689

So. 2d 794, 795 (Ala. 1996).[2] But as Joshua and Odysseus could attest, a "nearly impregnable" wall does not exclude every invader. Traditionally, sheriffs and their deputies could be assailed in five limited circumstances:

> "Section 14 immunity is not applicable when an action is brought: (1) to compel state officials to perform their legal duties; (2) to compel state officials to perform ministerial acts; (3) to enjoin state officials from enforcing unconstitutional laws; (4) to enjoin state officials from acting in bad faith, fraudulently, beyond their authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act."

*See Parker v. Amerson*, 519 So. 2d 442, 445 (Ala. 1987). Here, these five exceptions are immaterial because Hight Sr. seeks money damages for his wrongful death claim.

The Defendants, however, overlook a sixth exception to State immunity. Notably, the State is not immunized in "actions for damages brought against State officials in their individual capacity where it is alleged that they had acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law." *Ex parte Moulton*, 116 So. 3d 1119, 1141 (Ala. 2013). A recent Alabama Supreme Court decision indicates that this sixth exception generally applies to claims against

---

[2] Hight Sr. contends that the "Defendants must rely on state-agent immunity [as] set out in *Ex parte Cranman*" instead of the greater protections that State immunity affords. (Doc. 38 at 13.) However, State-agent immunity does not apply to sheriffs and their deputies. *See Ex parte Davis*, 930 So. 2d 497, 501 n.6 (Ala. 2005). Contrary to Hight Sr.'s principal argument, the recent decision in *Ex parte Pinkard* did not purport to change the longstanding special status of sheriffs and their deputies. *See Ex parte Pinkard*, --- So. 3d ----, 2022 WL 1721483, at *7 (Ala. May 27, 2022). Rather, *Pinkard* overruled a recent series of cases that dealt with other types of state officials. *See id*.

sheriffs and deputies. *See Birmingham Broadcasting (WVTM-TV) LLC v. Hill*, 303 So. 3d 1148, 1159–60 (Ala. 2020); *see also King v. Moon*, No. 2:21-cv-01568-ACA, 2022 WL 479410, at *6 (N.D. Ala. Feb. 16, 2022).

Because the Defendants do not address this sixth exception, they have not demonstrated that State immunity shields them from Hight Sr.'s wrongful death claim, and the Court need not decide if Hight Sr. adequately alleges that Sheriff Smith and Deputy Jackson "acted fraudulently, in bad faith, beyond their authority, or in a mistaken interpretation of law." *Ex parte Moulton*, 116 So. 3d at 1141. If the Defendants believe that Hight Sr. has not adequately alleged the applicability of the sixth exception to the facts of this case, they may make this argument at the summary judgment stage.

## IV.   Conclusion

Accordingly, the Defendants' Motions to Dismiss are DENIED.

**DONE** and **ORDERED** on November 23, 2022.

_____
L. Scott Coogler
United States District Judge

211211